Good morning. May it please the Court, my name is David Porter and I represent the petitioner Robert Henry in this matter. Simply put, the crime for which my client is serving life without possibility of parole, special circumstances murder, never happened. I'd like to first address the Court's recent order, the first issue being whether a certificate of appealability should issue on the actual innocence claim. As this Court is well aware, the Barefoot v. Estelle standard is a very modest one. That is, is the issue reasonably debatable among jurists of reason? Frankly, I don't know many issues that aren't debatable among jurists of reason. But the fact that this Court took almost a — the fact that the district court took almost a decade to decide this case is pretty good evidence that the issues are debatable among jurists of reason. Now, the evidence that was presented at Mr. Brewer's trial, particularly the testimony of Jeffrey Taggart, Charles Austin, and Pamela Conyers, is the best evidence that we have to show that the crime charged against my client never happened. Henry was — your client was tried and convicted of first-degree murder? That's correct. No lesser-included offense? He was not — No LIO instruction? There were LIO instructions. Yes, but no finding on any lesser-included offense? That's correct. They came — they came with a verdict on first-degree, special circumstances, and the principle — He was not charged with conspiracy or accessory or anything like that? He was not charged. That is correct. So the testimony of Mr. Taggart, Mr. Austin, and Ms. Conyers has withstood the crucible of cross-examination. This was in the Brewer trial? Mr. Brewer's trial. That is correct. And what that jury found — Did any of those witnesses testify in Henry's trial? Yes, Your Honor. Jeffrey Taggart did. And what — But Jeffrey Taggart — What did Taggart say during the Henry trial about what went down? He said that Mr. — he said that shots were fired out of the car and that those shots struck Mr. Turner, the victim. But he did say who shot? Who the shooter was? He believed that the shots might have come from the driver's side of the car and Mr. Brewer was driving the car at that time. Said he believed that or what? Sorry? He said he believed that or he wasn't sure or what? His testimony was not very definite, Your Honor. And then Brewer goes to trial separately — A year later. And Cousin Jeffrey or Jess — what's his name? It's actually a brother, Jeffrey Taggart, testified in — The brother gets on the stand and says, now I'm sure it was Odom, not Brewer, that shot. Yes, because he was actually in the car. And I need to explain that to the Court. The reason — He was actually in the car when he testified in Henry's trial, wasn't he? He was actually in the car is the testimony that comes out at Brewer's trial. And the reason why it comes out for the first time in the Brewer trial, and this is — Did — excuse me. It didn't come out in the Henry trial that he was a passenger? No, it did not. Well, he was cross-examined, wasn't he? Yes, he was. And nobody brought this out? No. Okay. Go ahead. In Mr. Brewer's trial — and this is explained in the declaration of Jeffrey Taggart that's attached to the Federal Petition — Mr. Taggart did not understand what transactional immunity meant until he was told during Mr. Brewer's trial, this is what transactional immunity means, you cannot be held liable for that event, and the testimony that you give today cannot be used against you. So in the Henry trial, when he thought he may be under some jeopardy, he didn't tell the whole truth? That's correct. And once he understood that he was home free, he told the God's truth? The light shone in the courtroom, Your Honor. Okay. All right. And that light was sufficient to illuminate for the jury. Before we get too flourishing here, I think Judge Noonan has a question. I'm sorry. Judge Noonan. Are you saying that at the Henry trial, that was beyond the defense to bring that out, that this was newly discovered evidence that could not have been discovered at the time of the trial? Yes. Why? Well, Mr. Taggart was represented by counsel, and the defense was that he was not That counsel presumably did not tell him what transactional immunity meant, or at least conveyed to him in a manner that he understood what transactional immunity meant. Clerk, just a couple more things. Yes. Was there an evidentiary hearing in district court? No, there was not. So the district court did not hear from the brother, the independent witness, or the forensic expert? That is correct. And I know that this Court's second issue was whether the case should be remanded for an evidentiary hearing. I believe that's really not necessary in this case. We've actually had something better than an evidentiary hearing. We've had the second trial.  And I believe that the defendant's testimony has all been subject to the crucible of cross-examination in that trial already at a time – remember, this happened a long, long time ago – at a time when memories were much fresher. It's a crucial difference, though, isn't there, the focus of – quite properly so – of both the Henry trial and the Brewer trial was the responsibility of – the factual responsibility of the individual defendants in those trials for what happened. And those trials necessarily focused on whether Henry was responsible for that chain of events legally and whether Brewer was responsible for the shooting death of Mr. Johnson. Neither of those proceedings focused on the relationship between these events, because the testimony in the Brewer trial is very different from the one in the Henry trial. Do you agree? That's absolutely correct, Judge Hawkins, yes. Would you address the Attorney General's argument that we don't have jurisdiction of a freestanding argument without a constitutional claim attached? Well, I think that – yes, I will. I've addressed that in my Rule 28J letter that was faxed to the Court on Friday. I believe that NBANC authority of this Court that was not cited by the Attorney General, Carragher v. Stewart, clearly stands for the proposition that there are such things as freestanding claims of actual innocence under Herrera. In fact, that Court went on to say this is the proper standard for such a claim and did exactly what I'm asking this Court to do. Mr. Henry is asking this Court to examine the evidence to determine whether there has been a truly persuasive – we recognize that the claim, that the standard is necessarily very high, but that doesn't mean that the Court should not engage in the examination. I think you've got us focused on the issue. You want to save a little time for rebuttal? I'll reserve it. Thank you, Your Honor. We'll hear from the State at this time. Ms. Wyand? Good morning. Good morning. May it please the Court, my name is Jamie Wyand and I represent the Respondent Warden Charles D. Marshall on behalf of the Attorney General. What was the State's theory in the Henry trial in terms of intent? The State's theory in terms of intent? Yes. This was a murder for hire, that there was a drug deal gone awry in which the appellant claims he was robbed, and in vengeance, he sought to kill Mr. Turner. He hired Mr. Brewer to kill Mr. Turner, and he offered to give him payment, hubbaz, which is cocaine. So the State's theory was A hires B to kill C? Yes, Your Honor. And B kills D? The wrong person was killed, that is true. Unintended? Unintended. But the intended victim really was Turner? It was Turner, and Mr. Johnson was killed. And that setting these events in motion, Henry is responsible for the outcome? That is correct. There was the intent theory, isn't it? Yes. It was transferred intent. How does that work if we believe the testimony at the Brewer trial? At Henry's trial? At the Brewer trial. Oh, at the Brewer trial. If we believe that, the prosecutor's theory was the same, and it is correct that there was conflict. The prosecutor's theory was the same, but two witnesses, including a witness not heard at the Henry trial, got on the stand and said it wasn't – Brewer didn't reach across the car to shoot. It was Odom in the passenger seat who shot, and it wasn't unintended at all. Odom fully intended to kill Johnson. And there was forensic evidence that, in fact, this was not a misaimed shot. It was a directed shot, correct? That is correct. There was forensic evidence that indicated that. Okay. If that – if, big if. Okay. If that version of events is correct, how can that intent transfer back to Henry? I would submit, Your Honor, that that's such a big if that we don't even get – Well, we get to ask questions. Okay. It's a hypothetical question. But if the defense, if you will, version of events, the two witnesses, the forensic evidence is believed, can that version, the intent inherent in that version of events, transfer to Henry? The answer is no, isn't it? The answer is no if Mr. Odom fired the shot and he did so for independent reasons. So if that scenario would be A hires B to kill C and D kills E, right? Instead. Right. So that's a completely different version of events than what the evidence showed at Mr. Henry's trial, and that would produce a different outcome. Your Honor is correct. Okay. So why shouldn't there be an evidence you're hearing in district court to sort this out? Well, first and foremost, because a freestanding actual innocence claim is simply not cognizable on Federal habeas review. That was the holding – Says who? Our Supreme Court in Herrera v. Collins repeatedly reiterated that freestanding actual innocence claims have never been held cognizable on Federal habeas review. It says also the Ninth Circuit in Coley v. Gonzalez in 1995, where it adopted the core holding of Herrera, and it was a noncapital case. The Coley court – The State's argument is that even if it's established on appeal, that the petitioner in a habeas proceeding is actually innocent of the charge for which he was convicted and is serving a life sentence. The Court's powerless to examine that. That was the holding of Coley and Herrera for noncapital cases, but I would also submit, Your Honor, that appellant's newly discovered evidence of actual innocence comes nowhere close to the extraordinarily high standard articulated by Herrera or the standard articulated in Carragher by the Ninth Circuit, which is that the appellant must not merely cast doubt as to his guilt, but he must actually come forward and affirmatively prove that he is probably innocent. That is a standard that he cannot possibly reach on the evidence that he presents now. Did the district court conduct any examination of the theory that I've just – the intent theory I've just described, the A hires B to kill C, but D kills E? Did it question the transfer of intent theory? Is there any analysis of the Taggart testimony, the new witness, the forensic evidence, in the district court's habeas order? In 1997, there was an order where the district court, even after finding that the claim was not cognizable, a different judge some six years later reached the merits of the claim and did find – it assumed – Did he hear from these witnesses? There was not a hearing where he heard from those witnesses, but the conclusion No evidence you're hearing at all? No, Your Honor. Was there – is there in Judge Singleton's order he was the follow-on judge, right? I believe so. Judge Singleton from Alaska? From Alaska. Was the follow-on judge? I believe so. Okay. Is there anything in his order which suggests that he weighed, examined, compared these witnesses' versions of events, disregarded some, accepted others, that sort of thing? The only finding was that the newly discovered evidence came nowhere close to meeting the Herrera-Karrager standard. The only thing I could find in his order that addressed that was he said that the confession just wipes that out. Right. In 2005, that's what he said, that the confession was such persuasive evidence, as was the other evidence of guilt, and so the standard couldn't be met. He didn't explicitly rule that it was not cognizable, although the district court did make that ruling in 1997, and that is my position today. But even if we look at that evidence and we compare it to the sort of evidence presented in Karrager or in the Supreme Court case, House v. Bell in 2006, where the Supreme Court found that even though there were multiple declarations, another man confessed to the crime, and the central forensic evidence, the blood and the semen, was called into question, still that did not reach the extraordinarily high standard set by Herrera of proving probable actual innocence. The Schlupp standard, yes, but not the Herrera standard. It also explained that the declarations there came from individuals without a clear motive to lie, individuals who are not convicts, suspects, or relatives. Here, that's all we have. It's conceivable, and in fact, it probably could be argued, that this would be an entirely different appeal if there had been an evidentiary hearing and the district court said, okay, I've heard from the brother, I've heard from the new witness, I've read the cross-examination, I've considered the forensic evidence, I note that the new witness was a jail-mate of Brewer, is that right? That's correct. And that their evidence is just not – I've listened to them testify on the stand and it's just not believable, so they haven't factually established whether actual innocence applies in a non-habeas case or not. It hasn't been proven factually, but we don't have that here, do we? Because there's no evidentiary here. We – but Herrera was clear in that the newly discovered evidence must be considered in light of all of the evidence of guilt presented at the trial, which is the paramount event in determining guilt or innocence. And this paramount event in this case occurred 20 years ago. What we have is some conflicting evidence. There was evidence at appellant's trial that Brewer pulled the trigger. Jeffrey Taggart, his brother, told the police that before the crime, appellant described the drug deal gone bad. He just talked about shooting Mr. Turner. And then Mr. Brewer, immediately following that conversation, went and retrieved a sawed-off .22 rifle. At the scene of the crime, the appellant repeatedly threatened Mr. Turner, saying, you're going to die. He then gestured at Mr. Turner, this is the guy. The wrong man was shot, that is true. But afterwards, there is testimony from multiple witnesses that the – Mr. Brewer came to collect the money on the murder-for-hire contract, and the appellant did not say, oh, there's no contract, I didn't hire you to do that. He said, you shot the wrong guy. Yeah, it's one of the – it's an interesting confession. What was the result of the Brewer trial? The murder trial? The Brewer trial. Oh, I'm sorry. I have a hearing impediment. The result there, he got second-degree murder, and it was found that he didn't use the firearm. And there was different testimony, primarily Charles Austin, who was a prior cellmate of Mr. Brewer's, who never came forward before and conceded that his testimony might have been helpful to appellant or to Mr. Taggart at his trial. He said, it was none of my business. And then, after spending time in jail with Mr. Brewer, came forward and has this whole new story that directly conflicts with the evidence presented at appellant's trial. So there is conflicting testimony, but I would submit that the evidence of guilt at appellant's trial was overwhelming and, including his confession on tape and off tape, corroborated by two police detectives, that the Court should deny a certificate of appealability and should not order further Federal proceedings in this matter. I don't see any other questions. Thank you for your argument, counsel. Rebuttal? It's very important to note that there were two, not just one, witness who didn't testify at Mr. Henry's trial, but who did testify at Brewer's. Charles Austin did not, but also Pamela Conyers did not. Was she unavailable? Pamela Conyers was we don't know if she was unavailable or not. We don't know the circumstances where she was. She did not come forward until much later after Mr. Henry's trial. But Taggart was not only available, he was on the stand. He was on the stand, Your Honor, but he was unavailable in the sense that he was I wonder if you would respond to the, what Judge Singleton concluded, the confession makes it highly improbable that he was innocent. I agree with that. But the point is that there was no evidentiary hearing. Now, no, you have the duty of affirmatively showing the innocence of your client. Under Carragher, that is true. And how are you going to do it with that confession? I agree it's a very difficult thing to overcome, but 12 jurors found upon listening to the Let's assume it is a confession. What did he confess to? He confessed to, his version is that if he had hired him to shoot Mr. Turner, he doesn't know why he's being charged, because the other guy was shot. Now, our contention is that Officer Bayward is hard of hearing, that Mr. Henry is soft spoken, and that the sentence did, was not said like that. We have Mr. Henry's declaration. Well, I mean, it's an interesting argument to make to a jury, but the jury accepted the other way. It doesn't seem to me it was put hypothetically, but anyway, that's your problem. It is my problem. And I would suggest that the way to resolve fairly this problem is to remand it to the district court, which said, well, I just don't believe Jeffrey Taggart, the brother of the defendant, and I don't believe Charles Austin, this former felon. He did not, however, remark at all upon Pamela Conyers, a nonrelative, nonfelon, who testified, whose testimony was obviously part of the reason why the jury came to the conclusion it did during Mr. Brewer's trial. Okay. We understand your argument. Thank you both for coming in today. The case just argued will be submitted for decision.
judges: Noonan, Hawkins, Thomas